Nos. 10-1725, 10-1726

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

## GERALD A. FAST, TALISHA CHESHIRE, AND BRADY GEHRLING

### Plaintiffs-Appellees,

### v.

### APPLEBEE'S INTERNATIONAL, INC.,

### Defendant-Appellant.

---

## Interlocutory Appeal From The United States District Court For The Western District of Missouri
## District Court No. 06-4146-CV-C-NKL

---

## BRIEF OF *AMICUS CURIAE*
## IN SUPPORT OF PLAINTIFFS-APPELLEES

---

Jamie G. Sypulski*
Law Office of Jamie G. Sypulski
122 South Michigan Avenue
Suite 1720
Chicago, Illinois 60603
(312) 360-0960
*Attorney of Record

Richard J. Burch
Bruckner Burch PLLC
1415 Louisiana Street
Suite 2125
Houston, Texas 77002
(713) 877-8788

Douglas M. Werman
Werman Law Office, P.C.
77 West Washington Street
Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Rebecca M. Hamburg
NATIONAL EMPLOYMENT LAWYERS
ASSOCIATION
44 Montgomery Street
Suite 2080
San Francisco, California 94104
(415) 296-7629

Attorneys for *Amicus Curiae*
National Employment Lawyers Association

# TABLE OF CONTENTS

**Page**

Table of Contents .................................................................... ii

Table of Authorities ............................................................... iv

Statement of *Amicus Curiae* ................................................. 1

Summary of the Argument ..................................................... 3

Argument ............................................................................ 6

I.  The Unlawful Use of the Subsection 3(m) Tip Credit In the
    Restaurant Industry Seriously Jeopardizes the 'Minimum
    Standard Of Living' Of Servers, Bartenders, Hosts and Other
    Tipped Employees, Drives Down Wages and Working
    Conditions, and Constitutes An Unfair Method of Competition.  6

    A.  In Passing the Act, Congress Sought to Foster the
        Minimum Standard of Living Necessary For the Health
        and Well-being of Workers .......................................... 6

    B.  Subsection 3(m) Tip Credit............................................ 9

II. Because the Tip Credit Under Subsection 3(m) Can Only Be
    Taken On The Wages of Tipped Employees, Applebee's Cannot
    Meet Its Burden That It Was Entitled to Take A Tip Credit On
    The Wages of Employees Performing Non-Tipped Duties, or
    Performing Substantial Amounts of Related Duties In A Tipped
    Occupation................................................................... 12

    A. Because the Tip Credit Provision of Section 203(m) Applies
       Only To Tipped Employees, Those Employees Who Perform

ii

Non-Tipped Duties, or Who Perform Substantial Amounts of Related Duties In A Tipped Occupation, Are Not Tipped Employees While Performing Those Duties …………...    13

    1.   Tipped Employees Performing *Any* Duties of Non-Tipped Occupations Must be Paid Minimum Wage..    18

    2.   Employees Performing *Substantial Amounts* of Related Duties In a Tipped Occupation Must be Paid Minimum Wage, and the Department's Decision to Define That Term As Meaning In Excess of Twenty Percent Is Reasonable, Practical and Accords With the Act………………………………………………………    21

B.   By Demonstrating That Applebee's Paid Them Less Than Minimum Wage, Plaintiffs Made A Showing Sufficient to Shift the Burden of Proof To Defendant To Establish A Lawful Justification For the Sub-Minimum Wage Rate…...    29

Conclusion ............................................    37

Certificate of Compliance with Rules 29(d) and 32(a) .......................    40

Certificate of Mailing...........................................    41

Appellate Case: 10-1725    Page: 3    Date Filed: 09/15/2010 Entry ID: 3703731

# TABLE OF AUTHORITIES

**Cases**           **Page**

*Acs, et al. v. The Detroit Edison Co.,*
    444 F.3d 763 (6th Cir. 2006) ........................................... 24

*Anderson v. Mt. Clemens Pottery Co.,*
    328 U.S. 680 (1945) ......................................................... 33

*Arnold v. Ben Kanowsky, Inc.,*
    361 U.S. 388 (1960) ......................................................... 30

*Auer v. Robbins,*
    519 U.S. 452 (1997) ......................................................... 13, 30

*Bamonte, et al. v. City of Mesa,*
    598 F.3d 1217 (9th Cir. 2010) ........................................ 24

*Barcellona v. Tiffany English Pub, Inc.,*
    597 F.2d 464 (5th Cir. 1979) .......................................... 30

*Chan v. Triple 8 Palace, Inc.,*
    No. 03 Civ. 6048, 2006 U.S. Dist. LEXIS 15780, at *1
    (S.D.N.Y. March 30, 2006) .............................................. 30

*Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.,*
    467 U.S. 837 (1984) ......................................................... 23

*Chisolm v. Gravitas Rest. Ltd.,*
    No. H-07-475, 2008 U.S. Dist. LEXIS 28254, *7
    (S.D. Tex. Mar. 28, 2008) ............................................... 30

Appellate Case: 10-1725　Page: 4　Date Filed: 09/15/2010 Entry ID: 3703731

*Chu Chung v. New Silver Palace Rest.,*
    246 F.Supp.2d 220 (S.D.N.Y. 2002) .................................. 30

*Citicorp Industrial Credit, Inc., v. Brock,*
    483 U.S. 27 (1987) ............................................................. 7, 8, 13

*Copeland v. ABB, Inc.,*
    521 F.3d 1010 (8th Cir. 2008) .......................................... 29

*Corning Glass Works* v. Brennan,
    417 U.S. 188 (1974) .......................................................... 31

*Dole v. Bishop,*
    740 F.Supp. 1221 (S.D. Miss. 1990) ................................ 19

*Donovan v. Brown Equip. & Serv. Tools, Inc.,*
    666 F.2d 148 (5th Cir. 1982) ............................................ 32

*Donovan v. United Video Inc.,*
    725 F.2d 577 (10th Cir. 1984) .......................................... 32

*Driver v. AppleIllinois, LLC,*
    265 F.R.D. 293 (N.D. Ill. 2010) ....................................... 28, 29, 30

*Fast, et al. v. Applebee's Int'l, Inc.*
    502 F.Supp. 2d 996 (W.D. Mo. 2007) .............................. 14

*Foremost Dairies, Inc. v. Wirtz,*
    381 F.2d 653 (5th Cir. 1967) ............................................ 32

*Friends of the Boundary Waters Wilderness v. Bosworth,*
    437 F.3d 815 (8th Cir. 2006) ............................................ 14

*FTC v. Morton Salt Co.,*
    334 U.S. 37 (1948) ............................................................ 31

v

Appellate Case: 10-1725    Page: 5    Date Filed: 09/15/2010 Entry ID: 3703731

*Gagnon v. United Technisource, Inc., et al.,*
    607 F.3d 1036 (5th Cir. 2010) ........................................... 24

*Gilreath, et al., v. Daniel Funeral Home, Inc.,*
    421 F.2d 504 (8th Cir. 1970) ............................................. 30

*Hearnsberger v. Gillespie,*
    435 F.2d 926 (8th Cir. 1970) ............................................. 16

*Hodgson v. Frisch's Dixie, Inc.,*
    No. 6641, 1971 U.S. Dist. LEXIS 12029, * 1
    (W.D. Ky. Aug. 16, 1971) .................................................. 19

*Hodgson v. Security National Bank,*
    460 F.2d 57 (8th Cir. 1972) .............................................. *passim*

*Idaho Sheet Metal Works, Inc. v. Wirtz,*
    383 U.S. 190 (1966) ........................................................ 30

*In re Novartis Wage and Hour Litigation,*
    611 F.3d 141 (2d Cir. 2010) .............................................. 15

*Johnson v. City of Columbia,*
    949 F.2d 127 (4th Cir. 1991) ............................................. 32

*Kilgore, et al. v. Outback Steakhouse of Florida, Inc.,*
    160 F.2d 294 (6th Cir. 1998) ........................................... 14, 22, 29

*Mitchell v. Kentucky Finance Co.,*
    359 U.S. 290 (1959) ........................................................ 30

*Mitchell v. Lublin,*
    358 U.S. 207 (1959) ........................................................ 15

Appellate Case: 10-1725    Page: 6    Date Filed: 09/15/2010    Entry ID: 3703731

*Murray v. Stuckey's, Inc.,*
    939 F.2d 614 (8th Cir. 1991) ............................................. 37

*Myers v. The Copper Cellar Corp.,*
    192 F.3d 546 (6th Cir. 1999) ............................................. 19

*Pedigo v. Austin Rumba, Inc., dba Alligator Grill,*
    No. A-08-CA-803-JRN, 2010 U.S. Dist. LEXIS 78251,
    *1   (W.D.Tex., June 17, 2010) ...................................... 34

*Rain & Hail Ins. Serv. v. Federal Crop Ins. Corp.,*
    426 F.3d 976 (8th Cir. 2005) ............................................. 25

*Rock v. Ray Anthony Int'l, LLC,*
    No. 09-16024, 2010 U.S. App. LEXIS 10775,
    *1 (11th Cir. May 26, 2010) ............................................. 24

*Senger v. City of Aberdeen,*
    466 F.3d 670 (8th Cir. 2006) ............................................. 25

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) ......................................................... 25

*Tennessee Coal Co. v. Muscoda Local,*
    321 U.S. 590 (1944)........................................................... 7

*United States v. Darby,*
    312 U.S. 100 (1941) ......................................................... 8

*United States v. Dixon,*
    548 U.S. 1 (2006)............................................................. 31

*Walling v. General Industries Co.,*
    330 U.S. 545 (1947) ......................................................... 15

Appellate Case: 10-1725   Page: 7   Date Filed: 09/15/2010  Entry ID: 3703731

*Williams v. Jacksonville Terminal Co.,*
      315 U.S. 386 (1942) ............................................................ 9

Yi, et al. v. Sterling Collision Centers, Inc.,
      480 F.3d 505 (7th Cir. 2007) ............................................ 24

Appellate Case: 10-1725    Page: 8    Date Filed: 09/15/2010  Entry ID: 3703731

| Statutes, Regulations and Rules | Page |
|---|---|

Pub. L. 89-601, § 1, Sept. 23, 1966, 80 Stat. 830. ........................  9

Pub. L. No. 93-259, § 13, Apr. 8, 1974, 88 Stat. 55......................  10

Fair Labor Standards Act of 1938, as amended,
    29 U.S.C. 201 et seq. ............................................................  *passim*

29 U.S.C. § 202(a) ............................................................  6, 7

29 U.S.C. § 202(b) ............................................................  6

29 U.S.C. § 203(m) ............................................................  *passim*

29 U.S.C. § 203(t) ............................................................  14, 21

29 U.S.C. § 206(a) ............................................................  29

29 U.S.C § 211(c) ............................................................  31

29 U.S.C. § 213 ............................................................  29

29 C.F.R. § 516.2 ............................................................  31

29 C.F.R. § 516.28 ............................................................  31

29 C.F.R. § 531.56(e) ............................................................  *passim*

29 C.F.R. § 541.2 ............................................................  15

29 C.F.R. §785.13 ............................................................  26

United States Dep't Labor Field Operations Handbook,
    Section 30d00(e) ............................................................  23, 25

Appellate Case: 10-1725   Page: 9   Date Filed: 09/15/2010  Entry ID: 3703731

**Other Authorities**                                    **Page**

Bureau of Labor Statistics, U.S. Dep't of Labor,
USDL 10-0646, *Occupation Employment and Wages –
May 2009* (May 14, 2010),
http://www.bls.gov/news.release/pdf/ocwage.pdf................. 10, 11

Bernhardt et al., *Broken Laws, Unprotected Workers,
Violations of Employment and Labor Laws in America's Cities*,
at 3, 23, 26 (2009) ......................................................... 12

Rajesh D. Nayak & Paul K. Sonn, National Employment Law
Project,
*Restoring the Minimum Wage for America's Tipped
Workers* (2009), http://www.nelp.org/tippedworkers2009... 11

William G. Whittaker, Congressional Research Service Report
for Congress,
*The Fair Labor Standards Act: Minimum Wage in the
108th Congress* (2005)................................................. 6

x

## STATEMENT OF *AMICUS CURIAE*

The National Employment Lawyers Association (NELA) advances employee rights and serves lawyers who advocate for equality and justice in the American workplace. Founded in 1985, NELA is the country's largest professional organization exclusively composed of lawyers representing individual employees in cases involving labor, employment and civil rights disputes. NELA and its 68 state and local affiliates have more than 3,000 members nationwide committed to working for those who have been illegally treated in the workplace. As part of its advocacy efforts, NELA supports precedent setting litigation and has filed dozens of *amicus curiae* briefs before this Court and other federal appellate courts to ensure that the goals of workplace statutes are fully realized. In particular, NELA is an organization dedicated to securing enforcement of state, federal, and local laws, regulations, and ordinances that have been enacted for the purpose of protecting workers in the area of wages, hours, and working conditions, and thereby promoting the general welfare.

1

NELA's mission is particularly implicated when litigation affects low-wage workers. According to the United States Bureau of Labor Statistics, restaurant jobs are habitually among the ten lowest paid jobs in the country.

Thus, the unlawful use of the tip credit provisions of the Fair Labor Standards Act results in wage loss to those least able to suffer it, and that is, of course, reason enough to oppose such practices. But it is not the only reason: tip credit abuse drives down wages and working conditions throughout an industry, and constitutes an unfair method of competition. Congress specifically identified such conditions as compelling passage of the FLSA.

Accordingly, NELA respectfully submits this brief in support of Plaintiffs-Appellees, pursuant to Rule 29 of the Federal Rules of Appellate Procedure.

Appellate Case: 10-1725    Page: 12    Date Filed: 09/15/2010 Entry ID: 3703731

## SUMMARY OF THE ARGUMENT

In 1966, at the same time that Congress expanded the reach of the Fair Labor Standards Act (the FLSA or the "Act") to provide many restaurant and hotel employees with minimum wage and overtime protections, it added a 'tip credit' provision in Subsection 3(m) of the Act. 29 U.S.C. §203(m). That Subsection provides that employers of tipped employees may use a portion of the gratuities paid by customers to those service employees as a credit toward the minimum wage obligation.

Positions in restaurants, including wait staff, hosts, dishwashers, and cashiers, are among the ten lowest paid jobs in the country. A prominent factor in the relatively low wages of tipped employees compared to other hourly workers is the widespread practice of directing employees paid a tip-credit rate to perform non-tipped duties, or significant amounts of non-tip producing duties. Employers engaging in this practice exploit the efforts of servers, bartenders and hosts by denying them both minimum wage and the opportunity to earn tips, as

3

by definition the non-tipped work they are required to perform has no customer contact.

Directing tipped employees to perform non-tipped work also injures other restaurant workers. Utilizing tipped employees to perform dishwashing, general restaurant cleaning, and food expediting duties at the reduced, tip-credit rate necessarily leaves fewer hours available for those workers hired to perform those duties at wage rates at or above the legally-mandated minimum wage.

While this practice no doubt results in a substantial reduction of the employer's labor costs, it both deprives the tipped employee of the opportunity to earn tips and prevents them from earning the legally mandated minimum wage.

The district court here correctly concluded that Congress intended that the tip credit be available to employers of those employees who are "primarily engaged in tip producing duties." Thus, the tasks actually performed by the tipped employee must be "within the 'tipped occupation'" in order for the employer to be entitled to the tip credit.

Defendant and its *amicus*, by contrast, offer the view that the

4

employee's "occupation" alone determines whether the tip credit may be taken by the employer. The Defendant's formalistic rule is however undermined both by the law and by their own reasoning. Thus, while Defendant at one point claims that its entitlement to the tip credit must be determined by an "occupation-based analysis," it recognizes that naming an occupation does not define it, and defining an occupation requires identifying its component duties.

The district court did err, however, in ruling that Plaintiffs must show both that they were paid less than minimum wage *and* that the sub-minimum wage rate was improper. To prove a facial violation of Section 206, employees must only prove that they were in fact paid less than the minimum hourly wage. The burden then shifts to the employer to prove that it was legally justified in paying the sub-minimum wage rate. If the employer fails to do so, the employees are entitled to prevail.

In requiring the employees to demonstrate that the employer had not met one or more requirements of Subsection 203(m), the district court placed on Plaintiffs the burden to disprove the tip credit entitlement, when the burden of proof to establish that entitlement

5

should have shifted to Defendant.

## ARGUMENT

I.    The Unlawful Use of the Subsection 3(m) Tip Credit In the Restaurant Industry Seriously Jeopardizes the 'Minimum Standard Of Living' Of Servers, Bartenders, Hosts and Other Tipped Employees, Drives Down Wages and Working Conditions, and Constitutes An Unfair Method of Competition

    A.    In Passing the Act, Congress Sought to Foster the Minimum Standard of Living Necessary For the Health and Well-being of Workers

After decades of academic research in the early 20th Century,[1] Congress could conclude in 1938 that labor conditions detrimental to the minimum necessary standard for the health and well-being of workers were pervasive.  29 U.S.C. §202(a).  To eliminate those conditions, Congress passed the Fair Labor Standards Act.  29 U.S.C. §202(b).

> The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities

---

[1]    *See* William G. Whittaker, Congressional Research Service Report for Congress, *The Fair Labor Standards Act: Minimum Wage in the 108th Congress* (2005), Summary.

6

of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.

29 U.S.C. §202(a); *Citicorp Industrial Credit, Inc., v. Brock*, 483 U.S. 27, 36 n.8 (1987). This "minimum standard of living" at the heart of congressional concern was emphasized by the Supreme Court a half-dozen years later:

> [T]hese provisions, like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.

*Tennessee Coal Co. v. Muscoda Local,* 321 U.S. 590, 597 (1944).[2]

Improving the plight of workers was not Congress' only concern.

29 U.S.C. §202(a); *Citicorp Indust.,* 483 U.S. at 36-37. Congress recognized that goods produced under substandard labor conditions result in unfair competition, and drive down wages and working

---

[2]     Since 1944, numerous courts have referenced the remedial and humanitarian nature of the Act. *See e.g.*, *Goldberg v. Wade Lahar*

7

Appellate Case: 10-1725     Page: 17     Date Filed: 09/15/2010 Entry ID: 3703731

conditions. *Citicorp Indust.*, 483 U.S. at 36 n.8. Aside from their effect, such practices are themselves pernicious, and "injurious to the commerce." *United States v. Darby*, 312 U.S. 100, 115 (1941).

President Roosevelt recognized this harm in 1937 in his message to the Congress when he wrote: "Goods produced under conditions which do not meet rudimentary standards of decency should be regarded as contraband and ought not to be allowed to pollute the channels of interstate trade." *Citicorp Indust.*, 483 U.S. at 36 n.8.

Given this clear intent from the other branches of government, the Supreme Court could conclude that "exclusion from interstate commerce of goods produced under substandard conditions is not simply a means to enforce other statutory goals; *it is itself a central purpose of the FLSA.*" *Id.* (emphasis added).

An employer's failure to lawfully pay minimum wage to an employee does that person serious financial harm. Where that failure affects an industry, the harm not only runs to thousands or tens of

---

*Const. Co.*, 290 F.2d 408, 415 (8th Cir. 1961).

Appellate Case: 10-1725    Page: 18    Date Filed: 09/15/2010 Entry ID: 3703731

thousands of employees and their families, but drives down wages and
working conditions and is "injurious to the commerce."

B.    Subsection 3(m) Tip Credit

Some tipped employees were covered by the 1938 Act.  *See e.g.,*
*Williams v. Jacksonville Terminal Co.,* 315 U.S. 386 (1942)(red caps
covered by Act).  Because the Act did not then extend to restaurants and
hotels, the vast majority were not.

That changed in 1966.  Congress broadened the reach of the FLSA
to include restaurants and hotels, thus bringing the great majority of
tipped employees, including servers, bartenders and hosts, within the
ambit of the Act.  *See* Pub. L. 89-601, § 1, Sept. 23, 1966, 80 Stat. 830.
At the same time, Congress created the 'tip credit' provision under
Subsection 3(m), which allows employers of tipped employees to take a
credit for a portion of the tips toward the minimum wage.

Congress placed further restrictions on the tip credit in 1974, by
providing that the employer must notify employees of the provisions of
Subsection 3(m), and that all tips received by the tipped employees must

9

be retained by them, except for permissible tip pooling. *See* Pub. L. No. 93-259, § 13, Apr. 8, 1974, 88 Stat. 55.

In the 1966 revisions, Congress provided that the tip credit could not exceed 50 percent of a current minimum wage. As Congress periodically raised the minimum wage, the cash wage to the tipped employee automatically increased at one-half that amount.

That ceased in 1996, when Congress "froze" the tip credit rate at one-half the minimum wage in effect on August 20, 1996, or $2.13. Thus, the minimum wage increase passed in 2007 had no effect on the tip-credit rate: the last increase, to $2.13, was on April 1, 1991.

While tipped employees can be found in barber shops and nail salons, hotels and parking lots, the vast majority of tipped workers are employed in the food services industry, including more than 2.3 million servers and over 490,000 bartenders. Bureau of Labor Statistics, U.S. Dep't of Labor, USDL 10-0646, *Occupation Employment and Wages – May 2009* (May 14, 2010), Table 1, at http://www.bls.gov/news.release-/pdf/ocwage.pdf.

Appellate Case: 10-1725    Page: 20    Date Filed: 09/15/2010 Entry ID: 3703731

Restaurant positions, including wait staff, hosts, dishwashers, and cashiers, are among the lowest paid jobs in the country. *Id.* Indeed, servers suffer three times the poverty rate from the workforce as a whole. Rajesh D. Nayak & Paul K. Sonn, National Employment Law Project, *Restoring the Minimum Wage for America's Tipped Workers*, 1, 3 (2009).[3] The median annual wage for servers in 2009 was $17,690.00. Bureau of Labor Statistics, *Occupation Employment and Wages – May 2009*, *supra*, Table 4.

A factor contributing to restaurant workers' precarious perch on the bottom rung of the income ladder is a troubling and widespread practice in the industry: the use of employees paid a tip-credit rate to perform non-tipped duties, or significant amounts of non-tip producing duties. Certainly, this practice harms tipped employees by denying them both minimum wage and the opportunity to earn tips, since by definition the non-tipped work they are required to perform has no

---

[3]     At http://www.nelp.org/tippedworkers2009.

Appellate Case: 10-1725     Page: 21     Date Filed: 09/15/2010 Entry ID: 3703731

customer contact.[4]  But the practice also injures other restaurant workers.  Where tipped employees perform dishwashing, cleaning, and food preparation, the dishwashers, janitors, and 'expo' employees originally hired to do that work get fewer hours.

Finally, because the goods that these restaurants purvey are the product of substandard labor conditions, this practice is "injurious to the commerce."

II.     Because the Tip Credit Under Subsection 3(m) Can Only Be Taken On The Wages of Tipped Employees, Applebee's Cannot Meet Its Burden of Proof That It Was Entitled to Take A Tip Credit On The Wages of Employees Performing Non-Tipped Duties, or Performing Substantial Amounts of Related Duties In A Tipped Occupation

The FLSA is a remedial law, and where that law provides an exception, the burden of proof is on the employer to establish

_____

[4]     This practice is by no means the only unlawful practice that tipped employees encounter.  *See* Bernhardt et al., *Broken Laws, Unprotected Workers, Violations of Employment and Labor Laws in America's Cities*, at 3, 23, 26 (2009) (30% of tipped workers not paid applicable tip-credit wage rate, and 12% suffered unlawful tip stealing by employer or manager), at http://nelp.3cdn.net/1797b93dd1ccdf9e7d_sdm6bc50n.pdf.

12

entitlement to that exception.  *Auer v. Robbins*, 519 U.S. 452, 462 (1997); *Citicorp Industrial Credit, Inc.,* 483 U.S. at 35.

Subsection 3(m), as an exception to the minimum wage obligation, grants employees a credit for tips received by tipped employees.  29 U.S.C. §203(m).  The burden of proving entitlement to the tip credit rests with the employer.  *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979).

A.    Because the Tip Credit Provision of Section 203(m) Applies Only To Tipped Employees, Those Employees Who Perform Non-Tipped Duties, or Who Perform Substantial Amounts of Related Duties In A Tipped Occupation, Are Not Tipped Employees While Performing Those Duties

An employer is entitled to take a tip credit only on the wages of employees who qualify as 'tipped employees,' and only if the employer: (1) pays the tipped employees the minimum required cash wage; (2) informs the tipped employees of the provisions of Subsection 3(m); (3) permits the tipped employees to retain all their tips (except for permissible tip pooling); and (4) ensures that the tipped employees' cash wage plus the tip credit equal at least the minimum wage.  29 U.S.C. §

13

203(m); *Kilgore, et al. v. Outback Steakhouse of Florida, Inc.,* 160 F.2d 294, 298 (6th Cir. 1998). A "tipped employee" is a person "*engaged in an occupation* in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t)(emphasis added).

An employee who works for an employer in a "dual job," in both tipped and non-tipped occupations, is a 'tipped employee' *only* during the time spent performing in the tipped position. 29 C.F.R. §531.56(e).[5] During the time the employee works in the non-tipped occupation, the employer must pay full minimum wage. *Id.*

The FLSA and the 'dual job' regulation, then, identify three types of possible duties that an employee might be required to perform: (1) work that earns tips; (2) work that is wholly unrelated to tipped work; and (3) "related duties in an occupation that is a tipped occupation."[6] 29 C.F.R.

---

[5]  Department of Labor regulations implementing the FLSA are accorded deference under *Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 842-43 (1984). *Friends of the Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821-22 (8th Cir. 2006).

[6]  The district court expressly identified these categories in its original decision. *Fast, et al. v. Applebee's Int'l, Inc.,* 502 F.Supp. 2d 996, 1002 (W.D. Mo. 2007). In the ruling *sub judice*, while not expressly

14

§531.56(e).

An employee is "engaged" in a particular occupation only to the extent that she performs duties consistent with that occupation. *See* 29 C.F.R. § 541.2 ("Job titles insufficient. A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary *and duties* meet the requirements of the regulations in this part.")(emphasis added); *Walling v. General Industries Co.,* 330 U.S. 545, 549 (1947)(executive exemption)("The engineers were in charge of the powerhouse and performed the *duties* generally incident to direct supervision of a highly mechanized operation.")(emphasis added); *Mitchell v. Lublin*, 358 U.S. 207, 213 (1959)("Congress deemed the activities of the individual employees, not those of the employer, the controlling factor in determining the proper application of the Act"); *In re Novartis Wage and Hour Litigation,* 611 F.3d 141, 150-51 (2d Cir. 2010)(whether employee is an outside

---

identified, the decision nonetheless implicitly recognizes that these three duty types capture the universe of possibilities. Jt. App. at 7-10.

15

salesperson depends on salary and duties, not job title); *Hearnsberger v. Gillespie*, 435 F.2d 926, 929 (8th Cir. 1970)(it is the "work duties" of plaintiff, not place of employment, that determine coverage under the Act).

Contrary, then, to Defendant's professed alarm, both the courts and Department regulation have traditionally looked to an employee's duties to determine whether that person was covered by the Act, or subject to an exemption.  The dual job regulation itself uses the term "related duties," 29 C.F.R. §531.56(e), to determine whether tasks, which are not themselves tip producing, may nonetheless be ancillary to duties of the tipped occupation.

As the district court correctly noted, a person ostensibly employed as a server who is required to clean bathrooms is not then performing 'related duties in a tipped occupation.'  Jt. App. at 144-45 n. 7.  The occupation that would include "clean bathrooms" among its duties would not be an occupation in which tips would be customarily and regularly

16

received.[7]  Nor would the task "clean bathrooms" be a related duty to a

tipped occupation: the non-tip producing duties the dual job regulation

deems "related duties" are tasks *attendant to* actual customer service.

29 CFR 531.56(e).

In short, the duties an employee is actually required to perform

determine whether the employer is entitled to take the tip credit.

The 'occupation-based analysis' that Defendant and its *amicus*

plump for is both vacuous and reckless.  Defendant can call dishwashers

"servers" and bartenders "brain surgeons," but such labels do nothing

but cloak, rather than reveal, true entitlement to the Subsection 3(m)

credit.  The district court was thus justifiably concerned at such

uncabined license.  Jt. App. at 138-39.

Before this Court, Defendant has lost none of its audacity.

"Because all of the activities of Applebee's servers and bartenders are

designed to foster a positive guest experience, all should be regarded as

tip producing."  Applebee's Brief at 46.  If a "positive guest experience"

---

[7]    Applebee's does have such an occupation, called 'General Utility'
or "GU," within its restaurant staffing.  Jt. App. at 76, 113.

Appellate Case: 10-1725    Page: 27    Date Filed: 09/15/2010 Entry ID: 3703731

is the touchstone, every employee in Applebee's from the CEO down could fall within its scope, and would sanction a server broiling a steak, a bartender shoveling snow, and a host washing a customer's car, while the owner tucks into the lunch special.

Defendant does eventually recognizes this failing, and acknowledges that something more is needed for "defining the scope of occupations." Applebee's Brief at 15. That something more, as Defendant admits, must be the actual duties that the employee performs – the very conclusion that the district court reached.

Defendant builds its entire argument on the 'occupation-based analysis' and the claim that the district court was wrong to use employee duties to determine the employer's entitlement to the tip credit. In ultimately acknowledging that a court does indeed need to examine those duties to determine whether an employee is working in or out of her "occupation," Defendant's argument fails.

    1.    Tipped Employees Performing *Any* Duties of Non-Tipped Occupations Must be Paid Minimum Wage

Since the tip credit under Subsection 3(m) is only available on

18

wages paid to tipped employees, tipped employees working in non-tipped occupations must be paid minimum wage. 29 U.S.C. §203(m); *see Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999)(salad preparers working in kitchen in traditional food preparation duties with no customer contact not tipped employees); *Kilgore v. Outback Steakhouse of Florida, Inc.,* 160 F.3d 294, 300-02 (6th Cir. 1998) (distinguishing between host and back-of-the-house employees like dishwashers, cooks and janitors, who have no customer contact); *Dole v. Bishop,* 740 F.Supp. 1221 (S.D. Miss. 1990); *Hodgson v. Frisch's Dixie, Inc.,* No. 6641, 1971 U.S. Dist. LEXIS 12029, at * 1 (W.D. Ky. Aug. 16, 1971). In *Dole,* the court determined that:

> the testimony presented at trial indicated that waitresses spent a substantial portion of their time in the afternoons before the restaurant opened performing such duties as cleaning bathrooms and other general areas of the restaurant, chopping vegetables, and making puddings and ice cream. Because these cleaning and food preparation duties were not incidental to the waitresses' tipped duties, the waitresses were entitled to the full statutory minimum wage during these periods of time.

740 F.Supp. at 1228. Similarly, in *Frisch's Dixie*, the court found that certain tipped employees performed non-tipped duties. "No tip credit

Appellate Case: 10-1725    Page: 29    Date Filed: 09/15/2010 Entry ID: 3703731

can be taken by defendants for those hours the waitresses and carhops spent in performing 'nontipped' work as mentioned in Finding of Fact No. 12 above. See 29 CFR 531.56(e)." 1971 U.S. Dist. LEXIS 12029, at * 13.

Applebee's brazenly flouts this fundamental requirement that the tip credit be taken *only* on the wages of tipped employees. In what it called "Labor Management Best Demonstrated Practices," Defendant created an express policy that tipped employee are to be utilized in non-tipped positions during "slow shifts." Jt. App. at 76. Tipped employees are to be used for cleaning duties. *Id.* And the express purpose of the policy is to save labor costs in the kitchen. *Id.*

But as the district court here observed, "[t]here is no reasonable argument that cleaning bathrooms is related to occupations where food and beverages are handled even if both the bathroom and the food promote a customer's enjoyment of the restaurant." Jt. App. at 145, n.7.

Where employers require tipped employees to perform the duties of cooks, janitors and dishwashers, those employees are not then

20

"tipped" employees because they are not engaged in a tipped occupation.

In that case, employers must pay those employees minimum wage.

> 2. Employees Performing *Substantial Amounts* of Related Duties In a Tipped Occupation Must be Paid Minimum Wage, and the Department's Decision to Define That Term As Meaning In Excess of Twenty Percent Is Reasonable, Practical and Accords With the Act

The Act expressly states that the tip credit is available only as to wages of tipped employees, and tipped employees are those persons "engaged in" an occupation that customarily and regularly receive tips. 29 U.S.C. §§203(m), (t). As the district court here emphasized, it is not simply that tips can be used to offset minimum wage, but that "Congress said that the employee's work must be within the 'tipped occupation.' Thus, Congress must have assumed that the tip credit would be applicable when an employee was doing primarily tip producing work." Jt. App. at 141.

One reasonable interpretation of Subsection 3(m) is that *only* wages of employees engaged in *tip-producing* duties are subject to the

21

tip credit: that is, duties that entail customer interaction.[8]  Jt. App. at

147.  But the Department of Labor did not go that far.  The Department

accepted that some tasks, while not entailing customer interaction, may

nonetheless be ancillary to tip producing duties.  Accordingly, the

Department promulgated a regulation that provides that performance of

"related duties . . . in the tipped occupation" by the tipped employee, if

not substantial, would not bar tip credit entitlement.

Thus, the tip credit is not lost if the employee spends "*part* of her

time cleaning and setting tables, toasting bread, making coffee and

occasionally washing dishes or glasses."  29 C.F.R. §531.56(e) (emphasis

added).  "*Such related duties* in an occupation that is a tipped

occupation need not by themselves be directed toward producing tips."

*Id.*

Simply put, an employer is entitled to the tip credit for wages of an

employee whose duties are to "take care of customer demands," *Kilgore,*

---

[8]     The duties one circuit called a waiter's "traditional tasks."  *Kilgore
v. Outback Steakhouse of Florida, Inc.,* 160 F.3d 294, 296 (6th Cir.
1998)(servers perform the "traditional tasks" of waiters and waitresses,

22

160 F.3d at 301, although *part* of the employee's time can be spent performing duties that are not customer demands, but are related.

The district court here did nothing more than rely on the Act and implementing regulation entitled to *Chevron* deference. Because that regulation states that the tip credit is not lost if "part" of a server's time is spent performing related duties in the tipped occupation, the court's task was to determine what constitutes "part" of a server's time.

The court concluded that the Department's Field Operations Handbook, Section 30d00(e), was both persuasive and practical. Jt. App. 147. Section 30d00(e) provides that where a tipped employee performs "related duties" in excess of 20 percent, the tip credit is lost. As the court noted, the '20 percent rule' is frequently used by the Department in providing guidance to employers as to what is deemed 'substantial.' Jt. App. at 143 n.5.

The Handbook *is* persuasive authority, entitled to respect from the courts as originating in the agency tasked with enforcement of the Act.

_____

"they take orders, deliver food and drinks, and take care of other customer demands").

Appellate Case: 10-1725    Page: 33    Date Filed: 09/15/2010 Entry ID: 3703731

"We consider that the rulings, interpretations and opinions of the Administrator under [the FLSA], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944). And indeed, numerous courts have had recourse to the Handbook as a matter of course. *See Gagnon v. United Technisource, Inc., et al.,* 607 F.3d 1036, 1041 (5th Cir. 2010)(Handbook persuasive under *Skidmore*; per diem payments part of regular rate where they vary with amount of hours worked); *Rock v. Ray Anthony Int'l, LLC*, No. 09-16024, 2010 U.S. App. LEXIS 10775, *11 (11th Cir. May 26, 2010)( Department Handbook used for criteria to determine dispatcher's discretion under administrative exemption); *Bamonte v. City of Mesa,* 598 F.3d 1217, 1229 (9th Cir. 2010)(Handbook "instructs" that donning required uniform at home is not work, nor integral to employment); *Yi  v. Sterling Collision Centers, Inc.,* 480 F.3d 505, 508  (7th Cir. 2007)(under Handbook, term 'commission' need not be used to invoke exemption);

24

*Acs  v. The Detroit Edison Co.,* 444 F.3d 763, 768 (6th Cir. 2006)(Department's 1970 Handbook used to demonstrate long-standing criterion for salary-basis test).

This is especially true where courts are considering regulations subject to more than one construction. "An agency's interpretation of its own ambiguous regulation will stand so long as it is not plainly erroneous or inconsistent with the regulation." *Senger v. City of Aberdeen*, 466 F.3d 670, 674 (8th Cir. 2006) *quoting Rain & Hail Ins. Serv. v. Federal Crop Ins. Corp.*, 426 F.3d 976, 979 (8th Cir. 2005) (internal quotation omitted)(reason for deferring to agency's interpretation of its regulations in "Manager's Bulletin," while not binding, is that agency has unique expertise in complex circumstance and court presumes agency has the power to authoritatively interpret regulations as part of delegated lawmaking powers).

Section 30d00(e) provides a reasonable interpretation of the Department's dual job regulation, and it draws its vitality from the regulation and the Act.  The district court was therefore correct to hold

25

that the 20-percent rule provides latitude to employers, while effectuating Congress' intent that the tip credit entitlement only apply to wages of employees primarily engaged in tip generating work.

Plaintiffs "cry 'Havoc,'" according to Defendant and its *amicus*: they claim that keeping track of a tipped employee's duties is an impossible task. Applebee's Brief at 10, 19, 44-46; NCCR Brief at 13-16. The truth is that *Defendant* devised its restaurant operation system to serve its own interests, and now that it is convenient to do so, claims it is powerless to control that system. [9]

An Applebee's restaurant is a highly regimented, rigorously controlled, computerized environment, and the operation of that environment is under Defendant's strict control. The duties that tipped employees perform are the duties that Defendant *assigns* them to perform. Defendant's *policies* direct managers to assign servers, bartenders and hosts to perform back-of-the-house duties that would

---

[9]   As the district court noted, Jt. App. at 146 n.8, Defendant has a legal obligation to exercise control over its workplace so work that work employees should not be performed is not performed. 29 C.F.R. §785.13.

26

otherwise be performed by expo and general utility employees earning at least minimum wage. Jt. App. at 76. Indeed, Defendant's "Labor Management Best Demonstrated Practices" expressly states the reason for using tipped employees to do non-tipped work is because "BOH [back-of-the-house] savings are possible utilizing FOH [front-of-the-house] Associates to complete some or all of . . ." the duties of GU and Expo personnel. *Id.* Managers are likewise instructed to direct tipped employees to perform cleaning duties during shift "slow times." *Id.*

Contrary to Defendant's lame contention, tipped employees in Applebee's restaurants would not be cleaning bathrooms, washing dishes, or expediting food if they were not told to do so; they would not be performing "side work," none of which includes customer interaction, from 'rolling' silverware[10] to vacuuming carpets, if Defendant did not

---

[10] The 'rolling' of silverware provides an illustrative example. Defendant's *amicus* glibly asserts that "anyone" visiting a restaurant has "observed" waiters and bartenders rolling silverware; *ergo*, "such tasks are inherent in those 'occupations.'" NCCR Brief at 12. But the decision to present a customer silverware rolled in a napkin is a decision that Defendant made for aesthetic or other reasons, and then told the tipped employees to roll silverware. There is nothing intrinsic in the essence of a server or bartender that compels silverware rolling; or, put

27

create and assign lists of 'sidework' for tipped workers to perform. And if Defendant does not schedule GU's or Expo personnel to work, the servers and bartenders and hosts will clean bathrooms or expo food or wash dishes. *See, e.g., Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 310 (N.D. Ill. 2010)(restaurant records show that no general utility personnel clocked-in during the entire two-week pay period, suggesting that tipped employees performed cleaning and dishwashing duties).

What Defendant and its *amicus* are really arguing is that the restaurant industry, at least the casual dining segment, has had a good thing going by using tipped employees paid a tip-credit rate to perform non-tipped work, and it does not want to give up the labor cost savings that that practice affords.

In the same vein, Defendant claims that drawing a line between tip-producing duties and related, but non-tip producing duties is especially onerous. Applebee's Brief at 46. In fact, as the district court noted, it is *only* on the margins that that may be true; the overwhelming

---

another way, it is highly unlikely that a patron tips based on whether silverware is rolled *in* a napkin or simply placed *on* the napkin.

Appellate Case: 10-1725     Page: 38     Date Filed: 09/15/2010 Entry ID: 3703731

number of duties in a restaurant can easily be parsed into whether they would or would not generate a tip.  The vast majority of tip-producing duties in a restaurant boil down to one thing: customer interaction. *Kilgore,* 160 F.3d at 296 (servers perform the "traditional tasks" of waiters and waitresses, "they take orders, deliver food and drinks, and take care of other customer demands"); *id.* at 301 (hosts are tipped employees because they have more than *de minimis* customer contact); *Driver*, 265 F.R.D. at 311 & n.16 (customer interaction pertinent to whether duty tipped or non-tipped).

> B.    By Demonstrating That Applebee's Paid Them Less Than Minimum Wage, Plaintiffs Made A Showing Sufficient to Shift the Burden of Proof To Defendant To Establish A Lawful Justification For the Sub-Minimum Wage Rate

The FLSA requires "[e]very employer to pay to each of his employees" minimum wage.  29 U.S.C. §206(a); *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1012 (8th Cir. 2008).

Section 13 of the Act identifies exemptions from the minimum wage requirement.  29 U.S.C. §213.  These exemptions are narrowly construed against the employer, and the burden of proof rests with the

29

employer to demonstrate entitlement to the exemption. *Auer v. Robbins*, 519 U.S. 452, 462 (1997) *quoting Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206 (1966); *Mitchell v. Kentucky Finance Co.,* 359 U.S. 290, 291 (1959); *Gilreath, et al., v. Daniel Funeral Home, Inc.,* 421 F.2d 504, 510 (8th Cir. 1970).

Thus, the employer bears the burden of establishing its entitlement to the tip credit. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 298 (N.D. Ill. 2010); *Chisolm v. Gravitas Rest. Ltd.,* No. H-07-475, 2008 U.S. Dist. LEXIS 28254, at *7 (S.D. Tex. Mar. 28, 2008); *Chu Chung v. New Silver Palace Rest.,* 246 F.Supp.2d 220, 229 (S.D.N.Y. 2002). The employer must meet the requirements for eligibility to take that tip credit under Subsection 203(m), and those requirements are strictly construed. *Chu Chung,* 246 F.Supp.2d at 229; *Chan v. Triple 8 Palace, Inc.,* No. 03 Civ. 6048, 2006 U.S. Dist. LEXIS 15780, at *8-9 (S.D.N.Y. March 30, 2006).

30

Placing the burden on the employer, as the district court noted, Jt. App. at 149-50, also accords with the traditional doctrine of allocating the burden to the party with whom particular knowledge lies. *Id.* at 149, *quoting United States v. Dixon*, 548 U.S. 1, 9 (2006). Of course, the Act requires that employers make and maintain records of "wages, hours, and other conditions and practices of employment . . .." 29 U.S.C § 211(c). These records include not only the daily time records of employees, 29 C.F.R. § 516.2, but for tipped employees, "*hours worked each workday in any occupation in which any employee does not receive tips*, and total daily or weekly straight-time payment made by the employer for such hours." 29 C.F.R. § 516.28 (emphasis added).

As a general rule of statutory construction, the burden of proving an exception to a prohibition of a statute lies with the one who claims the benefit. *FTC v. Morton Salt Co.,* 334 U.S. 37, 45-46 (1948). So too, "the general rule [is] that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works* v.

31

*Brennan*, 417 U.S. 188, 196-197 (1974).

The tip-credit provision of Subsection 3(m) is not an exemption under Section 13.  But that distinction has no significance as regards to the burden of proving an entitlement to an exemption or an exception. *Id.*; *Hodgson v. Security National Bank*, 460 F.2d 57, 59 n.4 (8th Cir. 1972)(employer has burden of proving exception); *Foremost Dairies, Inc. v. Wirtz,* 381 F.2d 653, 656 n4 (5th Cir. 1967); *Donovan v. Brown Equip. & Serv. Tools, Inc.,* 666 F.2d 148, 153 (5th Cir. 1982)("exemptions from or exceptions to the Act's requirements are to be narrowly construed against the employer asserting them."); *Donovan v. United Video Inc.,* 725 F.2d 577, 581 (10th Cir. 1984)(same); *Johnson v. City of Columbia,* 949 F.2d 127, 129-30 (4th Cir. 1991)(burden on employer to show entitlement to FLSA exception).

The issue before this Court is not which party bears the burden of proof: it is beyond any doubt that Applebee's bears the burden of proving

its entitlement to the Subsection 3(m) credit.[11]  The issue is rather what initial showing Plaintiffs must make to shift the burden to Defendant.

The district court ruled that Applebee's does indeed bear the burden of proof on the tip credit.  Jt. App. at 148-49, 152.  The court further held that, in order to trigger Defendant's burden, Plaintiffs must show that they performed work that was improperly compensated, and the amount and extent of that work as a matter of just and reasonable inference, consistent with *Anderson v. Mt. Clemens Pottery Co.* 328 U.S. 680 (1945).  Jt. App. at 152.

The district court's formulation up to that point is spot-on, and if the court had gone no further the decision would have accurately captured the burden shifting that must occur.  But it is this sentence that throws that otherwise proper formulation in doubt:  "the Court believes that Plaintiffs must do more than show they were paid at the tipped wage rate of $2.13 per hour."  Jt. App. at 152.

---

11     In asserting that it only bears the burden of production, Applebee's Brief at 52, Defendant has ignored every relevant case for the last 36 years.  *See Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d at 467 (FLSA amended on May 1, 1974, to place burden of proof on employer to

33

Here the district court went beyond requiring a *prima facie* showing from Plaintiffs, and on to requiring that Plaintiffs anticipate Applebee's tip-credit defense. Because this requires Plaintiffs to disprove Applebee's entitlement to the tip credit, that part of the court's decision is in error.

Plaintiffs correctly argue that once they demonstrate that they were paid less than minimum wage, the burden of proof shifts to Defendant to provide justification for that deviation from the Section 6 requirement, as, for example, establishing its entitlement to take the tip credit. Appellees' Brief at 63-64; *see Pedigo v. Austin Rumba, Inc., dba Alligator Grill*, No. A-08-CA-803-JRN, 2010 U.S. Dist. LEXIS 78251, at *22 (W.D.Tex., June 17, 2010)(pleading violation of minimum wage provision of Act shifts burden of proof to employer to establish entitlement to Subsection 3(m) tip credit). It is only in the context of the anticipated affirmative defense, the Subsection 3(m) tip credit, that the district court sought something more.

---

establish tips received under tip credit).

34

For example, if Plaintiffs were 7-Eleven cashiers, and established that they had been paid at an hourly rate less than minimum wage, there is no question that they would have met the *Mt. Clemens* burden. A facial violation of Section 6 is made out by demonstrating the failure to pay minimum wage: whether there is a consequence to that failure depends on whether the *employer* can establish a lawful reason that justified the sub-minimum wage rate.

By requiring Plaintiffs to go beyond this showing, and to demonstrate both that they were paid less than minimum wage *and* that the sub-minimum wage rate was improper, the district court thrust the burden of disproving the right to take the tip credit onto Plaintiffs, instead of properly placing the burden of proving its entitlement on Applebee's.

This Court's decision in *Hodgson v. Security National Bank*, 460 F.2d 57 (8th Cir. 1972), illustrates the point.

In *Hodgson*, the Secretary of Labor brought an action against the defendant bank for violations of the equal pay provision of the FLSA.

35

*Id.* at 58. The Secretary alleged that the bank hired male tellers at a starting monthly salary as much as $100 or more above the starting salary for female tellers. *Id.*

The Act provides for four exceptions to the equal pay obligation: (i) a seniority system; (ii) a merit system; (iii) a system whereby wages are measured by quantity or quality of production; or (iv) a differential based on any other factor other than sex. 29 U.S.C. § 206(d)(1); *Hodgson,* 460 F.2d at 59. The bank invoked the fourth exception, claiming that the males were actually "management trainees" while working as tellers. 460 F.2d at 58. The district court ruled the bank's trainee program a valid exception to the equal pay provisions of the Act, as it was based on factors other than sex. *Id.*

This Court reversed. *Id.* For reasons not germane to this case, the Court concluded that the management training program did not fall within an exception to the Act.

What is germane here is that the Secretary was not obligated to rebut, as part of his *prima facie* case, any or all of the four exceptions to

36

the equal pay provisions.  The Secretary need only point to the pay disparity between women and men tellers in order to make out his case; it was the bank's burden, thereafter, to prove a *bona fide* exception that would justify the pay differential.

That standard was no different in this Court's holding in *Murray v. Stuckey's, Inc.,* 939 F.2d 614 (8th Cir. 1991).  In *Murray,* the Court required the plaintiff show an injury under the Act that, if unrebutted, would entitle the plaintiff to prevail: in *Murray*, it was uncompensated overtime hours that were not captured by the employer's records; in *Hodgson,* it was a gender-based pay disparity; here, it is Applebee's failure to compensate Plaintiffs at the minimum wage rate.  Once such a showing is made, the burden of proof shifts to the employer.

## CONCLUSION

A determination that an employee's wages are subject to the Subsection 3(m) credit can only be made with reference to the employee's duties: where those duties demonstrate that the employee is

37

*not* engaged in a tipped occupation, the employee must be paid minimum wage. With respect to "related duties," the district court correctly held that an employee's performance of a substantial amount of such duties, in excess of 20 percent, likewise results in the loss of the tip credit.

A *prima facie* violation of Section 6 of the Act is made out where the employee shows the employer failed to pay minimum wage, because absent some statutory justification, proven by the employer, the employee is entitled to prevail. Plaintiffs established a Section 6 violation by demonstrating that Defendant paid them less than minimum wage. Plaintiffs are entitled to prevail, unless Defendant can prove an exception.

The court was therefore in error to require that Plaintiffs show both sub-minimum wage and that that wage rate was unlawful. In doing so, the court impermissibly placed the burden of disproving the Subsection 3(m) credit on Plaintiffs.

38

Respectfully submitted,

_____

Jamie G. Sypulski
One of the Attorneys for *Amicus Curiae* National Employment Lawyers Association

Jamie G. Sypulski
Law Office of Jamie G. Sypulski
122 South Michigan Avenue
Suite 1720
Chicago, Illinois 60603
312/360-0960

Douglas M. Werman
Werman Law Office, P.C.
77 West Washington
Suite 1402
Chicago, Illinois 60602
312/419-1008

Richard J. Burch
Bruckner Burch PLLC
1415 Louisiana Street
Suite 2125
Houston, Texas 77002
(713) 877-8788

Rebecca M. Hamburg
NATIONAL EMPLOYMENT LAWYERS ASSOCIATION
44 Montgomery Street
Suite 2080
San Francisco, California 94104
(415) 296-7629

Attorneys for *Amicus Curiae*
National Employment Lawyers Association

39

## Certificate of Compliance With Rules 29(d) and 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and 32(a) because this brief contains 6,998 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), according to the word count of the Microsoft Word Count processing system used to prepare the brief.

DATED: September 13, 2010

_____
Jamie G. Sypulski

Appellate Case: 10-1725    Page: 50    Date Filed: 09/15/2010 Entry ID: 3703731

## CERTIFICATE OF MAILING

I, Douglas M. Werman, an attorney, hereby certify that on September 14, 2010, two (2) copies of the Brief of *Amicus Curiae* in Support of Plaintiffs-Appellees and one (1) additional copy of the brief on a CD, were served via U.S. mail on:

Daniel B. Boatright
S. Jane Bruer
Littler Mendelson, P.C.
2300 Main Street, Suite 900
Kansas City, MO  64108

Charles A. Gentry
Carson & Coil, P.C.
515 East High Street
P.O. Box 28
Jefferson City, MO  65102

Paul L. Frieden
U.S. Department of Labor, Office of the Solicitor
200 Constitution Avenue, N.W., Room N2716
Washington, D.C. 20210

Dated:  September 14, 2010

By:_____
            DOUGLAS M. WERMAN

41