Nos. 10-1725, 10-1726
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT
_____

GERALD A. FAST, TALISHA CHESHIRE,
and BRADY GEHRLING,

                            Plaintiffs-Appellees,

v.

APPLEBEE'S INTERNATIONAL, INC.,

                            Defendant-Appellant,
_____

On Interlocutory Appeal from the United States District Court
for the Western District of Missouri

District Court No. 06-4146-CV-C-NKL
_____

# BRIEF OF THE NATIONAL COUNCIL OF CHAIN RESTAURANTS
# AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT'S PETITION
# FOR PANEL REHEARING OR REHEARING EN BANC
_____

Lisa S. Blatt
R. Stanton Jones
R. Reeves Anderson
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004
(202) 942-5000
(202) 942-5999 (fax)

*Attorneys for the National Council of
Chain Restaurants*

Dated:  May 6, 2011

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ..........................1

ARGUMENT ................................................................................2

I. THE PANEL'S DECISION WILL HAVE PROFOUND AND IMMEDIATE CONSEQUENCES FOR ONE OF THE LARGEST INDUSTRIES IN THE UNITED STATES ....................................................................................3

II. THE PANEL'S DECISION IS IN TENSION WITH THE SUPREME COURT'S DECISION IN *CHANDRIS, INC. v. LATSIS* ........................................................................8

III. THE PANEL'S DECISION PLACES RESTAURANTS WITHIN THE EIGHTH CIRCUIT AT A COMPETITIVE DISADVANTAGE .........................................10

CONCLUSION .........................................................................12

# TABLE OF AUTHORITIES

                                                                                                                                  **Page(s)**

**CASES**

*Chandris, Inc. v. Latsis*,
   515 U.S. 347 (1995) ..................................................................................8, 9

*Pellon v. Bus. Representation Int'l, Inc.*,
   528 F. Supp. 2d 1306 (S.D. Fla. 2007),
   *aff'd*, 291 F. App'x 310 (11th Cir. 2008) ................................................6, 7, 10

**STATUTES**

29 U.S.C. § 203 .................................................................................................3

Fair Labor Standards Act,
   29 U.S.C. §§ 201 *et seq.* ...................................................................................2

Fair Labor Standards Amendments of 1966,
   Pub. L. No. 89-601, 80 Stat. 830 (1966) ............................................................3

**OTHER MATERIALS**

152 Cong. Rec. 11802 (June 20, 2006) ................................................................11

153 Cong. Rec. 1378 (Jan. 17, 2007) .............................................................10, 11

Occupational Information Network, *Bartenders* (updated 2010),
   http://www.onetonline.org/link/summary/35-3011.00 .......................................5

Occupational Information Network, *Waiters and Waitresses* (updated 2010),
   http://www.onetonline.org/link/summary/35-3031.00 .......................................4

United Press International (UPI), *Number of U.S. Restaurants Declines*,
   Aug. 21, 2010, *available at*
   http://www.upi.com/Business_News/2010/08/21/Number-of-US-
   restaurants-declines/UPI-80231282400173/ .....................................................3

U.S. Bureau of Labor Statistics, *Occupational Employment and Wages:
Bartenders*, May 2009, http://www.bls.gov/oes/current/oes353011.htm ............4

Appellate Case: 10-1725    Page: 3    Date Filed: 05/06/2011 Entry ID: 3784951

U.S. Bureau of Labor Statistics, *Occupational Employment and Wages: Waiters and Waitresses*, May 2009, http://www.bls.gov/oes/current/oes353031.htm ................................................4

U.S. Bureau of Labor Statistics, *Occupational Employment Statistics (OES) Highlights*, Sept. 2009, http://www.bls.gov/oes/highlight_foodanddrink.pdf ..........................................3

U.S. Bureau of Labor Statistics, *Occupational Outlook Handbook, 2010-11 Edition: Food and Beverage Serving and Related Workers*, http://www.bls.gov/oco/ocos162.htm ................................................................3

U.S. Dep't of Labor, *Minimum Wages for Tipped Employees*, Jan. 1, 2011, http://www.dol.gov/whd/state/tipped.htm ......................................................10

# IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

The National Council of Chain Restaurants ("NCCR") is the leading trade association for chain restaurant businesses and a division of the National Retail Federation, the world's largest retail trade group. Its members include large national chain restaurant brands, most of which consist of local multi-unit operators and franchisees. Together, NCCR's member companies own and operate more than 50,000 restaurant facilities, and another 70,000 facilities operate under members' trademarks through franchising agreements. Member companies and their franchisees employ more than 2.8 million workers in the United States.

For more than 40 years, NCCR has advocated sound public policy on behalf of chain restaurant operators. NCCR regularly takes particular interest in cases, like this one, that could adversely impact the business operations of its members.

The panel's decision in this case departs from the text of the Fair Labor Standards Act and its implementing regulations. And the decision, if left uncorrected, will upset decades of settled industry practice by NCCR's members and will impose unworkable burdens and tremendous uncertainty on businesses.

---

[1] No party's counsel authored this brief in whole or in part. No party or a party's counsel made a monetary contribution intended to fund the preparation or submission of this brief, and no person other than *amicus curiae* or its counsel made such a monetary contribution. NCCR submits this brief, with the consent of all parties, pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure.

# ARGUMENT

Prior to this case, no court had ever held that the "tip credit" available to employers under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, turns on the percentage of time that an employee spends performing "tip-producing" versus "nontip-producing" duties. Slip Op. at 3, 5. For more than four decades, the food and beverage service industry in the United States has conducted business without regard to this amorphous and unworkable distinction.

The panel's decision in this case upends the uniform and longstanding interpretation of the tip credit as well as restaurant industry practice for compensating "tipped employees" under the FLSA. Remarkably, the panel held that when a waiter performs a certain amount of "nontip-producing duties," that person is no longer a waiter, and thus a restaurant may not take the tip credit for the time spent performing such duties. The panel likewise held that restaurants may not take the tip credit for time that bartenders spend performing "nontip-producing duties," since for that time, a bartender ceases being a bartender. The decision will dramatically and adversely change the way the food and beverage service industry does business, and thus the decision raises a question of exceptional importance that warrants rehearing by this Court.

## I. THE PANEL'S DECISION WILL HAVE PROFOUND AND IMMEDIATE CONSEQUENCES FOR ONE OF THE LARGEST INDUSTRIES IN THE UNITED STATES

The food and beverage service industry is the nation's third largest business sector. U.S. Bureau of Labor Statistics, *Occupational Employment Statistics (OES) Highlights*, Sept. 2009, http://www.bls.gov/oes/highlight_foodanddrink.pdf. The 580,000 restaurants throughout the United States employ seven percent of the U.S. workforce. *Id.*[2] More than one fourth of those restaurant employees are waiters and bartenders. *Id.* Roughly 3 million waiters, bartenders, and other tipped employees currently work in the United States. U.S. Bureau of Labor Statistics, *Occupational Outlook Handbook, 2010-11 Edition: Food and Beverage Serving and Related Workers*, http://www.bls.gov/oco/ocos162.htm.

Since the enactment of the federal tip credit in 1966, restaurants in the United States consistently have paid waiters, bartenders, and other workers as "tipped employees," pursuant to 29 U.S.C. § 203(t). *See* Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, 80 Stat. 830 (1966). Under the FLSA, tipped employees are guaranteed to earn at least the federal minimum wage, currently $7.25 per hour, in combined cash wages and tips. 29 U.S.C. § 203(m), (t). And they frequently earn more than minimum wage. According to recent U.S.

---

[2] United Press International (UPI), *Number of U.S. Restaurants Declines*, Aug. 21, 2010, *available at* http://www.upi.com/Business_News/2010/08/21/Number-of-US-restaurants-declines/UPI-80231282400173/.

3

government data, waiters in 2009 earned on average $9.80 per hour. U.S. Bureau of Labor Statistics, *Occupational Employment and Wages: Waiters and Waitresses*, May 2009, http://www.bls.gov/oes/current/oes353031.htm. Bartenders earned $10.08 per hour. U.S. Bureau of Labor Statistics, *Occupational Employment and Wages: Bartenders*, May 2009, http://www.bls.gov/oes/current/ oes353011.htm. There is no dispute that the plaintiffs—current and former Applebee's waiters and bartenders—earned more than the federal minimum wage at all times. Slip Op. at 3.

In light of decades of settled industry practice, restaurants have never monitored or kept track of the time tipped employees spend performing various tasks. Nor have restaurants categorized those tasks as either "tip-producing" or "nontip-producing," assuming such categorization is even possible. Waiters, for instance, perform dozens of diverse duties in the course of a single shift, often spending just a few seconds on a particular task before rapidly shifting gears to another task. An online database sponsored by the Department of Labor catalogs more than two dozen duties associated with the occupation of a waiter. Occupational Information Network, *Waiters and Waitresses* (updated 2010), http://www.onetonline.org/link/summary/35-3031.00. Some of a waiter's duties may overlap with the duties of a restaurant's host, cook, bartender, or busboy. *See id*. The myriad duties of a bartender similarly may overlap with the duties of a

4

bouncer, waiter, or dishwasher. Occupational Information Network, *Bartenders* (updated 2010), http://www.onetonline.org/link/summary/35-3011.00. But restaurants do not track waiters' and bartenders' time as if those employees were simultaneously engaged in all of these different occupations. Rather, restaurants treat waiters as waiters, and bartenders as bartenders, without regard to whether they are directly serving customers or performing the other duties of a waiter or bartender. The practical import of the panel decision, then, is to fundamentally and adversely change the way the restaurant industry pays millions of its employees and records their time.

The financial impact of this change on restaurants would be staggering. For waiters that spend just 20% of their time performing "nontip-producing duties" (the minimum time required to trigger the panel's new rule), restaurants must pay those employees *48% more* in cash wages based on the panel's decision.[3] For waiters that spend 25% of their time on such duties, the restaurants' cost to pay those waiters increases by 60%. For chain restaurants that employ hundreds or thousands of waiters across the country, the immediate financial impact of this decision could be crippling. The restaurant industry is extremely competitive, and

---

[3] Currently, a waiter is paid $2.13 per hour, or $85.20 for a 40-hour week. Under the panel's decision, the restaurant must pay the waiter $7.25 per hour for the 20% of his time dedicated to nontip-producing duties, which would increase his weekly cash wage to $126.16, a 48% increase in payroll cost for that employee.

5

most operators have narrow profit margins.  Restaurant operators can establish menu prices only in light of payroll costs.  The tip credit for decades has allowed employers to hold down prices while ensuring that tipped employees receive the minimum wage through a combination of cash wages and tips.

In addition, the panel's decision requires employers to differentiate between "tip-producing" versus "nontip-producing" duties and to monitor and record their employees' time accordingly.  But drawing such inherently unclear lines is antithetical to the practical experience of working in a restaurant.  For example, if a waiter sets a table before a customer sits down, is that a tip-producing task?  What if the customer is already seated at the table when the waiter sets down the napkin and utensils?  Cleaning up a customer's spilled beverage at a waiter's own table might lead to a larger tip, but cleaning up an identical spill at another waiter's nearby table or from the floor might not produce a tip.  As these common examples illustrate, it is a matter of degree, perspective, and guesswork as to how to categorize the varied tasks of tipped employees.  These practical realities led another court to conclude that such line-drawing is "infeasible," "impractical," "impossible," and "unsolvable"—in sum, a "nightmare."  *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1314 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008).  The panel inexplicably ignored the concerns expressed by Applebee's, NCCR, and the National Restaurant Association that

6

plaintiffs' interpretation of the FLSA is unworkable and leaves employers with no clear guidance.

The panel also held that restaurants must "maintain sufficient records from which the employees can differentiate between when they performed tipped duties and when they performed related but nontip-producing duties." Slip Op. at 15. Restaurants have never attempted to micro-monitor their employees in this manner, and doing so would be unmanageable. One option would be for businesses to force tipped employees to record their own time spent on each task. Like lawyers who bill in six-minute intervals, waiters and bartenders would be forced to "maintain precise time logs accounting for *every minute* of their shifts." *Pellon*, 528 F. Supp. 2d at 1314 (emphasis added). But unlike lawyers who regularly spend several consecutive hours on a single task, waiters are constantly shifting gears. This requirement inevitably would interfere with the quality of customer service, as waiters would be preoccupied with constantly memorializing their tasks. For example, a waiter would need to record the time spent pouring a drink behind the counter (arguably a nontip-producing duty) and then separately record the time spent delivering that drink to a customer (which clearly is tip-producing). Assuming that waiters spend an average of 25 seconds per task, *see* Br. of Appellant at 19, every waiter will be forced to record 1,152 separate tasks per eight-hour shift. That regime is untenable for businesses.

7

In addition to the unmanageable record-keeping required under the panel's decision, employers are left to speculate about how a court or jury might decide *post hoc* which tasks are tip-producing or not. Given the protean determinations that would surely result from judicial second-guessing, employers would have no reliable way of ensuring *ex ante* compliance with the FLSA or assessing their potential liability. The only safe way for restaurants to guarantee compliance would be to forego the federal tip credit altogether. Congress could not plausibly have intended that result when it enacted the tip credit 45 years ago.

## II. THE PANEL'S DECISION IS IN TENSION WITH THE SUPREME COURT'S DECISION IN *CHANDRIS, INC. v. LATSIS*

In an analogous employment context, the Supreme Court rejected an interpretation of the Jones Act that would cause an employee's status to change throughout his workday depending on the tasks performed. In *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995), the Court held that an employee is a "seaman" and thus covered by the Jones Act if the employee has a sufficient connection with a vessel; the employee "does not lose that" occupational status when he happens to be working "off the ship." *Id.* at 359-60. Likewise, the Court explained, "[l]and-based maritime workers do not become seamen because they happen to be working on board a vessel." *Id.* at 361.

The Court reasoned that it is "important to avoid engrafting upon the statutory classification . . . a judicial gloss so protean, elusive or arbitrary as to

8

permit a worker to walk into and out of coverage in the course of his regular duties." *Id*. at 363. The Court emphasized that a worker should not be deemed to "oscillate back and forth . . . *depending upon the activity*." *Id*. (emphasis added). Any such activity-based standard, the Court explained, was contrary to "the interests of employers and maritime workers alike in being able to predict who will be covered by" the statute "before a particular workday begins." *Id*.

Accordingly, the Eighth Circuit should reconsider the panel's erroneous, task-based standard for tipped employees, which would produce the precise problems the Supreme Court sought to avoid in *Chandris*. Under the panel's rule, tipped employees would "walk into and out of coverage," *id.*, hundreds or thousands of times in the course of a single shift. As a result, rather than determining the applicability of the FLSA's tip-credit provision "before a particular workday begins," *id.*, restaurant operators and their employees would have to track every task performed throughout a shift, categorize each as "tip-producing" or "nontip-producing," and determine payroll retrospectively. The Supreme Court in *Chandris* directed that "courts should not employ a 'snapshot' test for [employment] status, inspecting only the situation as it exists at the instant of [alleged] injury; a more enduring relationship is contemplated in the jurisprudence." *Id*. at 363 (internal citation omitted). There is no reason for a different approach to compensating tipped employees under the FLSA.

9

## III. THE PANEL'S DECISION PLACES RESTAURANTS WITHIN THE EIGHTH CIRCUIT AT A COMPETITIVE DISADVANTAGE

As Applebee's explains in its rehearing petition, the panel's decision conflicts with *Pellon v. Business Representation Int'l, Inc.*, 528 F. App'x 310 (11th Cir. 2008), in which the Eleventh Circuit allowed an employer to take the FLSA's tip credit for *all* of its tipped employees' time. *See* Pet. for Reh'g at 10-11. Employers thus are subject to different rules for complying with the federal minimum wage in the Eighth and Eleventh Circuits, and businesses in the Eighth Circuit will be harmed as a result.

The effect of different rules regarding the tip credit can be seen in how businesses have responded to state minimum wage laws, which complement the federal requirements. Some state minimum wage laws do not permit employers to take any tip credit under state law. *See* U.S. Dep't of Labor, *Minimum Wages for Tipped Employees*, Jan. 1, 2011, http://www.dol.gov/whd/state/tipped.htm. In those states, businesses have suffered. As then-Senator Coleman of Minnesota explained in 2007, "Minnesota is one of seven States that do not have tip credit. My hospitality industry is at a competitive disadvantage with respect to those States which surround us which allow for tip credit." 153 Cong. Rec. 1378, 1379 (Jan. 17, 2007). Unlike Senator Coleman's home state of Minnesota, North Dakota's state minimum wage law does have a tip credit. "Consider dining out in the border town of Moorhead, MN. Just across the river in Fargo, ND, there are

10

more than 50 national chains, and there is only 1 in Moorhead." *Id*. In other words, Fargo has three times the population of Moorhead, but *fifty times* the number of chain restaurants. The difference is "an unfair playing field" where North Dakota restaurants can take the tip credit and where Minnesota restaurants cannot. *Id*. *See also* 152 Cong. Rec. 11802, 11806 (June 20, 2006) (similar comments by Senator Enzi of Wyoming). In sum, the availability of the tip credit impacts restaurants' decisions regarding where to do business.

National chain restaurants looking to launch new stores inevitably will need to consider this financial burden felt only in the Eighth Circuit, where the tip credit is now limited. That is why, as Senator Coleman aptly remarked, the tip credit may be "somewhat of a technical issue, [but] at the end of the day this is about jobs, plain and simple." 153 Cong. Rec. 1379.

\* \* \*

The panel's decision imposes a host of unworkable and detrimental consequences on the nation's food and beverage service industry. Restaurants have relied on the tip credit since 1966. Rather than upend decades of settled industry practice, the Court should rehear this matter of exceptional importance.

11

## CONCLUSION

For the foregoing reasons, the petition for panel rehearing or rehearing en banc should be granted.

Respectfully submitted,

 /s/ Lisa S. Blatt
Lisa S. Blatt
R. Stanton Jones
R. Reeves Anderson
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004
(202) 942-5000
(202) 942-5999 (fax)

*Attorneys for the National Council of Chain Restaurants*

Dated:  May 6, 2011

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 2,547 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6), respectively, because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2007 in Times New Roman 14-point font.

    /s/ Lisa S. Blatt
    Lisa S. Blatt

# CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Daniel B. Boatright
S. Jane Bruer
LITTLER MENDELSON, P.C.
2300 Main Street, Suite 900
Kansas City, MO 64108
816.627.4400
*Attorneys for Defendant-Appellant*

Matthew A. Clement
Timothy W. VanRonzelen
Kari A. Schulte
Cook, Vetter, Doerhoff & Landwehr, P.C.
231 Madison
Jefferson City, MO 65101

Charles A. Gentry
Jason H. Ludwig
Carson & Coil
515 East High Street
P.O. Box 28
Jefferson City, MO 65102
*Attorneys for Plaintiffs-Appellees*

One paper copy was served via U.S. Mail, First-Class postage pre-paid, on the following:

M. Patricia Smith
William C. Lesser
Paul L. Frieden
Maria Van Buren
United States Department of Labor
Office of the Solicitor, Room N2716
200 Constitution Avenue, N.W.
Washington, DC 20210
*Attorneys for Amicus Curiae*
*United States Department of Labor*

Jamie G. Sypulski
Law Office of Jamie G. Sypulski
122 South Michigan Avenue
Suite 1720
Chicago, IL 60603

Douglas M. Werman
Werman Law Office, P.C.
7 West Washington Street
Suite 1402
Chicago, IL 60603
*Attorneys for Amicus Curiae National Employment Lawyers Association*

Peter G. Kilgore
National Restaurant Association
1200 17th Street, N.W.
Washington, DC 20036

Francis X. Neuner, Jr.
Spencer Fane Britt & Browne LLP
1 North Brentwood Blvd., Suite 1000
St. Louis, MO 63105
*Attorneys for Amicus Curiae*
*National Restaurant Association*


|     May 6, 2011     |   /s/ Lisa S. Blatt   |
|---|---|
| Date | Lisa S. Blatt |